**UNITED STATES of America,**

v.

**Andrea CAFIERO, Defendant.**

**No. 03–CR–10182–MEL.**

United States District Court,
D. Massachusetts.

Nov. 3, 2003.

See also 242 F.Supp.2d 49.

James W. Lawson, Oteri, Weinberg & Lawson, Boston, MA, for Andrea Cafiero (1), Defendant.

Kimberly P. West, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

## *MEMORANDUM AND ORDER*

LASKER, District Judge.

Cafiero moves to dismiss the instant indictment charging defendant with interference with a flight crew under 49 U.S.C. § 46504. Cafiero contends: (1) that the Court lacks subject matter jurisdiction over the offense charge and, alternatively, that the indictment fails to state an offense under 49 U.S.C. § 46504; and (2) that the indictment was the result of prosecutorial vindictiveness.

The motion is GRANTED.

## I.  Facts

The facts are as set forth in the Court's Memorandum and Order of January 28, 2003. On June 5, 2002, Cafiero boarded an Air Europe flight in Cancun, Mexico, destined for Rome, Italy, without any scheduled stops. Aboard the flight, Cafiero became "disruptive and unruly." Eventually, an altercation occurred between Cafiero and the passenger next to him, which involved the two entering the galley area of the airplane. Hoping to assist, and possibly stop the spat, another passenger and some crew members intervened. As a consequence of the brawl, two passengers and one of the crew members, Nardo Pedalino, were struck.

After getting hit, Pedalino entered the cockpit to alert the Captain, Maurizio Guzzetti, of the problematic passenger, Cafiero. Guzzetti agreed to speak to Cafiero, but as he exited the cockpit Cafiero approached him and another altercation began, which resulted in Guzzetti hitting Cafiero with his fist. This knocked Cafiero to the floor of the plane. Guzzetti then asked the flight crew to tie extension belts around Cafiero's hands and feet. In spite of the fact that he was essentially "hogtied," Cafiero continued to be "unruly." Apparently two people sat in parallel seats and kept their feet on Cafiero's body to further restrict his movements until the plane landed.

More than eight hours remained until the flight was to reach Rome, thus, worried about Cafiero's unpredictable behavior, Guzzetti resolved to make an emergency landing and to divert the plane to Logan Airport, although New York City was closer.

Forty-five minutes later, the plane landed in Boston. According to the law enforcement officers present upon landing—both Federal Bureau of Investigation officers and Massachusetts State Troopers—as the cockpit doors opened, the flight crew pushed an unruly Cafiero off of the airplane. The state police took Cafiero into custody immediately and conducted what they characterize as an inventory search. At this point the police found the black taped package on Cafiero, which tests revealed contained over 180 grams of cocaine.

Cafiero claimed that his chest, arm and side were injured by the flight crew and passengers' rough-handling. In response the police transported him via ambulance to Massachusetts General Hospital for tests. The medical test results showed that Cafiero was inebriated, but that he did not have any significant injuries. From the hospital Cafiero was transferred to the United States Courthouse, where another small bag of cocaine was found in his pants' pocket, amounting to .39 grams.

## II.  Procedural History

On June 5, 2002, a complaint alleging knowing and intentional possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), was issued against Cafiero before Magistrate Judge Alexander. On June 24, 2002, Judge Alexander ruled that there had been an insufficient showing of probable cause to believe that Cafiero possessed cocaine with the intent to distribute the drug in the United States, and dismissed the complaint. The following day, June 25, 2002, the government returned with a new complaint charging Cafiero with simple possession of cocaine in violation of 21 U.S.C. § 844. The parties appeared before Magistrate Judge Collings, who held that Cafiero could be prosecuted for simple possession of cocaine. An indictment was subsequently returned charging Cafiero with both simple possession and possession with intent to distribute. Cafiero was then ordered detained by Magistrate Judge Alexander.

In October 2002, Cafiero moved to dismiss the indictment for lack of subject matter jurisdiction, and also moved to suppress the cocaine seized from his person. This Court granted both of Cafiero's motions on January 28, 2003, finding that: (1) the government lacked the necessary jurisdictional nexus to prosecute Cafiero for possession with intent to distribute or for simple possession; and (2) all items seized from Cafiero were to be suppressed as fruits of a poisonous tree since the search could not be justified as a search incident to arrest, nor was Cafiero in lawful custody at the time the inventory search occurred. The government appealed both decisions, and the appeals are pending. Cafiero has remained incarcerated throughout the proceedings, since June 5, 2002.

On April 30, 2003, the government offered to forego its appeal in exchange for Cafiero pleading guilty to interfering with a flight crew and accepting a sentence of time served. Cafiero declined the offer on May 8, 2003, refusing to plead guilty to a crime over which he believed the court had no jurisdiction. The following day, the government urged Cafiero to reconsider and reiterated its offer, indicating that should he not accept, he would be indicted for interference with a flight crew. Again Cafiero declined the offer. On May 27, 2003, the FBI telephonically interviewed flight crew attendant Pedalino once more. Pedalino elaborated on Cafiero's actions during the flight. The next day, May 28, 2003, Cafiero was indicted on the present charges of interference with flight attendant Nardo Pedalino, in violation of 49 U.S.C. § 46504.

### III. Cafiero's Motion to Dismiss

Cafiero makes two arguments in support of his motion to dismiss: (1) that the Court lacks subject matter jurisdiction over the offense charged; and (2) the return of this indictment and circumstances of this case constitute prosecutorial vindictiveness.

### A. Subject Matter Jurisdiction

The jurisdictional question at issue is whether the offense with which Cafiero is charged took place within the "special aircraft jurisdiction of the Unites States" as defined under 49 U.S.C. § 46501(2).

■ The indictment charges that defendant Cafiero:

"... did, on an aircraft in the special aircraft jurisdiction of the United States, by assaulting and intimidating Nardo Pedalino, a flight attendant of the aircraft, interfere with the performance of the duties of said flight attendant, and did lessen the ability of said flight attendant to perform those duties. All in violation of Title 49, United States Code, Section 46504."

The point of contention is whether Cafiero's conduct aboard the Air Europe flight interfered with flight attendant Pedalino's "performance of his duties" within the meaning of the statute, during the time when the plane was being diverted to Boston and was in the jurisdiction of the United States.

Cafiero contends that nothing in Pedalino's statements made during the May 27, 2003 interview establishes that Cafiero interfered with the performance of Pedalino's duties through assault or intimidation after the aircraft entered the United States. Cafiero maintains that the assault on Pedalino occurred while the aircraft was in international air space, and any interference with Pedalino's performance of his duties as a result of Cafiero's conduct ended well before the plane was in United States airspace. Cafiero notes that by the time it was decided to divert the plane to Boston, he was already immobilized by being taped, bound and hog-tied, and it was two colleagues of Pedalino's,

and not Pedalino himself, who remained with Cafiero during the flight to Boston, keeping their feet on Cafiero to restrict his movements.

The government maintains that although Cafiero remained bound through the duration of the flight path to Boston, he nevertheless interfered with Pedalino's duties as a flight attendant because Pedalino was preoccupied with Cafiero's behavior. In Pedalino's statements to the FBI on May 27, 2003, Pedalino advised that Cafiero continued to "be nervous" and "yell and swear at the crew as the plane landed", and Cafiero "was struggling against his restraints." Pedalino also advised that he was watching the other passengers "because they were angry with what Cafiero had done, and continually made suggestions as to how Cafiero should be handled." Pedalino further stated that "he did not want to take a chance of untying Cafiero, because he thought he might act up again."

Both parties rely on *United States v. Hall*, 691 F.2d 48 (1st Cir.1982). In *Hall*, the Court of Appeals affirmed the district court's denial of defendant's motion to dismiss the indictment. The indictment alleged that the offense occurred in the Northern District of Illinois. Prior to the plane being diverted to Chicago, the defendant's conduct had been abusive, assaultive, threatening, and unpredictable. The defendant argued that no part of the offense occurred within the district of Illinois because he sat quietly in his seat during that portion of the flight. The court interpreted Section 1472[1] to mean "that the offense continues for at least as long as the crew are responding directly, and in derogation of their ordinary duties, to the defendant's behavior." *Hall*, 691 F.2d at 50. The court concluded that "even if Hall's behavior did not directly intimidate the crew until the flight reached Chicago, . . . the offense lasted until he was removed from the plane." *Id.* The *Hall* court reasoned that although Hall was sitting quietly in his seat in the last portion of the flight, "the pilots were in the process of diverting the aircraft to make an unscheduled landing in Chicago, to remove him." *Id.* The Court found it "difficult to imagine a more obvious interference with the crew's duty to fly." *Id.* Because the crew was responding to defendant's behavior when it was forced to make the unscheduled landing in Chicago, the offense continued to occur while the flight was over Illinois and, thus, the court held that venue was proper in Illinois.

The present case is distinguishable from *Hall*. The assault upon Pedalino by Cafiero occurred in international airspace. The facts do not indicate that Pedalino had anything specifically to do with Cafiero during the time that Cafiero was tied up and the plane was en-route to Boston. Furthermore, it was two colleagues, and not Pedalino, who were required to sit with Cafiero and keep their feet upon him to restrain his movements while the flight proceeded to Boston.

While Cafiero may have interfered with other members of the crew, his behavior during the time that the Air Europe flight was diverted to Boston does not permit a conclusion that he interfered with *Pedalino's* performance of his duties, as charged, while the plane was in the special aircraft jurisdiction of the United States. The holding of the *Hall* case cannot be expanded to mean that interference with a flight crew member occurs every time a flight crew member becomes concerned or apprehensive about an individual's behavior

---

**1.** Section 46504 is identical to Section 1472, except that the "or threaten" language has been eliminated.

and conduct aboard a flight. If such a construction of the statute were adopted, it would apply to any action aboard a plane bound for the United States even if the action occurred on the other side of the globe.

Accordingly, I find that the language of the present indictment does not fall within the meaning of 49 U.S.C. § 46504, as Cafiero's behavior has not been shown to have interfered with Pedalino's performance of his duties during the time that the plane was on its way to Boston and in the jurisdiction of the United States. Therefore, the Court lacks subject matter jurisdiction, and the motion to dismiss is GRANTED.

## B. Prosecutorial Vindictiveness

Notwithstanding the holding that the Court lacks subject matter jurisdiction over this case, I recognize that the issue is open for determination at an appellate level. Consequently, it is appropriate to address Cafiero's argument that the case presents a presumption of prosecutorial vindictiveness.

■ Generally, a prosecutor's decision to indict is presumed legitimate. *United States v. Sanders,* 211 F.3d 711, 716 (2nd Cir.2000). However, evidence of prosecutorial vindictiveness can result in the dismissal of an indictment, as a violation of a defendant's Fifth Amendment right to due process. *United States v. Lanoue,* 137 F.3d 656, 664 (1st Cir.1998). Prosecutorial vindictiveness may be established in two ways: (1) by producing evidence of actual vindictiveness sufficient to show a due process violation; or (2) by showing that there is a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir.1987) (citing *United States v. Goodwin,* 457 U.S. 368, 376, 380 n. 12, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). If the defendant demonstrates a presumption of

vindictiveness, the government bears the burden of rebutting the presumption by offering objective evidence justifying the prosecutor's action. *Marrapese,* 826 F.2d at 147.

■ The facts of this case do not demonstrate that there was any "genuine animus" on the part of the Assistant United States Attorney in bringing the present indictment, *Sanders,* 211 F.3d at 717, and Cafiero makes no such claim. Nevertheless, Cafiero has made a sufficient showing that the circumstances may warrant a presumption of prosecutorial vindictiveness.

The First Circuit has cautioned that "courts should go very slowly in embracing presumption of prosecutorial vindictiveness in pretrial settings." *United States v. Stokes,* 124 F.3d 39, 45 (1st Cir.1997). This hesitance reflects the distinction discussed by the Supreme Court in *Goodwin* between pre- and post-trial settings. The *Goodwin* court noted the "give-and-take" nature of plea negotiations in the pre-trial setting, and the latitude that the prosecutor has to add charges during this time. *Goodwin,* 457 U.S. at 378–381, 102 S.Ct. 2485. At the same time, the court commented that "a change in the charging decision made *after* an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Goodwin,* 457 U.S. at 381, 102 S.Ct. 2485 (emphasis added). In light of this history, the present case is more akin to a post-trial than pre-trial setting.

Here, an indictment was brought against Cafiero in June 2002. Cafiero then invoked his right to move to dismiss the indictment for lack of subject matter jurisdiction, and to move to suppress the evidence seized from his person. A hearing was held on these motions and the parties stipulated to the facts. Cafiero's two motions were granted on the merits. Only when Cafiero was successful in his mo-

tions, and three months had passed, did the government indicate that it intended to indict Cafiero on new charges, using information that they had access to from the beginning of this case. These actions on the part of the government suggest the possibility of prosecutorial vindictiveness.

Another factor which could support a presumption in this case is that there appears to be little purpose served by bringing the indictment for interference with a flight crew. Cafiero points out, and the government concedes, that the guideline sentencing range for a violation of Section 46504, in Cafiero's case, would be four to ten months. Yet Cafiero has long since served more time than a sentence at the top end of the range would require, having been incarcerated for the past 16 months.

The reasons thus far provided by the government for going forward with the indictment appear, at first blush, to be insufficient to rebut the presumption of prosecutorial vindictiveness. The government maintains that it first obtained evidence regarding the more extensive range of Cafiero's unruly conduct aboard the flight when it was preparing for the motion to suppress. The evidence was included in the government's opposition to Cafiero's motion to dismiss and motion to suppress. The government contends that this evidence, elaborated upon by the May 27, 2003 interview of Pedalino, constitutes new evidence which provided the basis for indicting Cafiero for interference with a flight crew.

However, in reviewing the FBI's report of Pedalino's May 27, 2003 interview, the interview provides almost no new information on how Cafiero interfered with Pedalino's performance of his duties while the plane was in flight over the United States en-route to Boston. Additionally, it appears from the facts that the government had the necessary evidence to proceed with a charge for interference with a flight

crew from a June 2002 interview of Captain Guzzetti, the pilot of the flight. It is unclear why the government chose to wait almost a year, until May 2003, before indicting Cafiero under Section 46504, and then only after the indictment for cocaine-related offenses was dismissed.

I hesitate to find adversely against the government without giving it the opportunity to elucidate more fully its motivation for bringing the present indictment. Accordingly, I conclude that it would be appropriate to conduct an evidentiary hearing to determine whether the facts of the case warrant a presumption of prosecutorial vindictiveness.

### III.

For the reasons stated above, the motion to dismiss for lack of jurisdiction is GRANTED. An evidentiary hearing is to be held on the issue of prosecutorial vindictiveness.

It is so ordered.