Dennis M. BARTEL, Debtor.

Dennis M. Bartel, Plaintiff–Appellant,

v.

Paul F. Walsh, Jr., District Attorney for Bristol County of Massachusetts, and Stephen M. O'Reilly, Defendants–Appellees.

BAP No. MB 08–078.
Bankruptcy No. 05–13134–JBR.
Adversary No. 06–1161–JBR.

United States Bankruptcy Appellate Panel of the First Circuit.

May 4, 2009.

David G. Baker, Esq., on brief for Appellant.

Martha Coakley, Esq. and David Hadas, Esq., on brief for Appellee.

Before VAUGHN, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Appellate Panel Judge.

Dennis M. Bartel (the "Debtor") appeals from the October 10, 2008, bankruptcy court order (the "Order") granting the motion of Paul F. Walsh [1] and Lieutenant Stephen O'Reilly ("Lieutenant O'Reilly") (together, the "Defendants") for summary judgment on the Debtor's complaint alleging violations of the Federal Civil Rights Act, 42 U.S.C. § 1983; the Massachusetts Civil Rights Act, General Laws Chapter 12 § 11I; the automatic stay provisions of the bankruptcy code, 11 U.S.C. § 362; [2] and

[1]. Walsh is no longer the district attorney for Bristol County and the Debtor did not amend the complaint to name the current district attorney as a defendant.

[2]. Unless otherwise noted, all references to the

abuse of process. The bankruptcy court's decision turned on its conclusion that § 362(b)(1) categorically excepts criminal prosecutions from the automatic stay. We agree.

## BACKGROUND[3]

The Debtor was a contractor who owned a home construction company called New Dimensions Construction Services. He filed a chapter 13 petition in 2005, and later converted his case to chapter 11. After he commenced the adversary proceeding that is the subject of this appeal, but before the court issued the Order, the court converted his case to chapter 7.

While the Debtor was a debtor-in-possession under chapter 11, Lieutenant O'Reilly appeared at the Debtor's home, served the Debtor with a search warrant, and seized the Debtor's financial books and records. While doing so, he allegedly told the Debtor that the attorney general of the Commonwealth of Massachusetts had "placed a block" on the Debtor's bankruptcy case and that the Debtor was not going to be allowed to go forward with the case. Additionally, Lieutenant O'Reilly allegedly asked the Debtor, "what did you do with Berghaus' money?," which the Debtor understood to be reference to Larry Berghaus, who was a client of New Dimensions and a state police officer.

The Debtor further alleged that, the next day, the Debtor's attorney received a call from attorney James Rudser, who stated that he represented Jose and Isabelle Rodriguez in state court actions against the Debtor and New Dimensions. The Rodriguezes had filed a proof of claim

in the bankruptcy case. Rudser allegedly told the Debtor's attorney that he (Rudser) was the source of the actions taken by Lieutenant O'Reilly, that such actions were only the beginning of the Debtor's troubles, and that he had Lieutenant O'Reilly on his "speed dial." Rudser also allegedly asked whether the Debtor would provide him with an affidavit that he could use in the state court proceeding, in exchange for which Rudser would withdraw the Rodriguezes' claim and arrange for Lieutenant O'Reilly's investigation to cease.

In February, 2006, the Debtor commenced the adversary proceeding that is the subject of this appeal. In his complaint, he alleged that the Defendants took the above-described actions under color of law, in exercise of the authority of the Commonwealth of Massachusetts and with knowledge that the Debtor was a debtor in a bankruptcy case. Additionally, he alleged that the actions were intended to deprive the Debtor of the rights and privileges afforded under the Bankruptcy Code, including the automatic stay, and were not related to any legitimate exercise of police power or any legitimate criminal matter. Rather, he alleged, the actions were designed and intended to harass and intimidate the Debtor to compel him to pay a debt through the unlawful use of criminal process. Moreover, the Debtor asserted that Lieutenant O'Reilly's seizure of his financial records made it impossible for him to prosecute his bankruptcy case, make payments to creditors, and fully assist his counsel in preparing the necessary pleadings and papers, and deprived him of relief available under the Bankruptcy Code.

---

"Bankruptcy Code" or to statutory sections herein are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101, *et seq.*

**3.** As this appeal presents no factual disputes, and indeed the Debtor stated in his brief that the bankruptcy court had "well stated" the facts, we draw most of the background information from the bankruptcy court's opinion that accompanied the Order.

588

In March, 2006, a Bristol County grand jury returned an indictment against the Debtor, charging him with multiple counts of "Larceny Over $250." In October, 2007, a jury convicted the Debtor on seven of such counts, and the Debtor was sentenced to seven and a half years in state prison. The state court will determine the Debtor's restitution obligation in further proceedings.

In July, 2008, the Defendants moved for summary judgment on the Debtor's complaint, in which they argued that the automatic stay did not apply to the Defendants' actions, that there was no merit to the Debtor's theory that Lieutenant O'Reilly's questioned him about "Berghaus' money" to intimidate him into paying Berghaus' claim, that the Defendants did not violate the Debtor's civil rights because the automatic stay was inapplicable to their actions, and that the bankruptcy court lacked jurisdiction over the civil rights claims. The Debtor objected to the Defendants' motion for summary judgment, arguing that they cannot "cloak" their abuse of authority within the police power exception to the automatic stay, that the Defendants were estopped from denying the content of Lieutenant O'Reilly's conversation with the Debtor, and that the Debtor's civil rights claims were well founded and were within the bankruptcy court's jurisdiction.

The bankruptcy court held a hearing on the matter, during which the parties essentially reiterated their positions. Additionally, the Defendants explained that the district attorney's office had given the Debtor "100 per cent access" to the Debtor's financial records by making them available to him, for any reason, during business hours. The Debtor responded that the state court judge had ordered the district attorney's office to return the documents to the Debtor, that this did not occur, and that the Debtor filed a motion to compel in the bankruptcy court while the case was pending with a different bankruptcy judge. The bankruptcy court stated that the Debtor had taken no action with respect to compelling the return of the records in the five months since the case had been reassigned to a new judge, despite the Debtor having had "plenty of opportunity" to do so. The bankruptcy court concluded the hearing by taking the matter under advisement.

The bankruptcy court issued the Order granting the Defendants' motion for summary judgment, accompanied by a memorandum of decision. In its decision, the bankruptcy court concluded that the Defendants had not violated the automatic stay as a matter of law, because § 362(b)(1) provides a categorical exception to the automatic stay and the scope of § 362(b)(1) includes property of the estate. Additionally, the court further concluded that the Debtor's allegations of civil rights violations must fail as a matter of law because they were predicated on the Debtor's allegation of a stay violation. This appeal followed.

**JURISDICTION**

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order granting summary judgment is a final order where no counts against any defendants remain. *See Segarra Miranda v. Garrido Pagan (In re Garrido Jimenez),* 370 B.R. 878, 880

(1st Cir. BAP 2007). Here, the bankruptcy court had previously dismissed the complaint as to three of the Defendants; the Order resolved all claims against the remaining two Defendants. Additionally, the bankruptcy court issued an order in which it stated that the complaint was dismissed as to all counts and all Defendants. The Order is, therefore, a final appealable order. *See id.*

## STANDARD OF REVIEW

■ The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719 n. 8 (1st Cir.1994). On appeal, we review the grant of summary judgment *de novo. See Richardson v. Preston (In re Antex, Inc.),* 397 B.R. 168, 171 (1st Cir. BAP 2008).

## DISCUSSION

### A. The Summary Judgment Standard

Bankruptcy Rule 7056 incorporates Rule 56(c) as the appropriate standard for deciding a motion for summary judgment. Thus, the moving party bears the initial burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Razzaboni v. Schifano (In re Schifano),* 378 F.3d 60, 66 (1st Cir.2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the initial burden is met, the burden shifts to the non-moving party to show that genuine issues of material fact exist. *Id.* (citing *F.D.I.C. v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990)). The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation to es-

tablish genuine issues of material fact. Competent evidence is required. *Id.* (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

### B. Exclusive Jurisdiction and the Automatic Stay

■ As an initial matter, we are compelled to clarify the relationship between the automatic stay and a bankruptcy court's jurisdiction over property of the estate. The Debtor argues that because 28 U.S.C. § 1334(e) grants bankruptcy courts exclusive jurisdiction over property of the bankruptcy estate, the "inevitable conclusion is that a state may not issue a search warrant and use it to seize property of the bankruptcy estate in any circumstance without obtaining relief from the automatic stay, even in the context of a criminal prosecution." This is not correct. The fact that the bankruptcy court has exclusive jurisdiction over property of the estate has no bearing on whether the automatic stay is in effect. Instead, the fact that the bankruptcy court has exclusive jurisdiction over property of the estate simply means that it has authority to determine whether the stay was in effect. We turn, then to the question of whether the bankruptcy court erred in determining that the stay was not in effect because the criminal prosecution exception applied.

### C. Alleged Violation of the Automatic Stay

#### 1. The Criminal Prosecution Exception

■ The bankruptcy court concluded that the Defendants were entitled to summary judgment because § 362(b)(1) categorically excepts all criminal actions from the automatic stay. With some exceptions, § 362(a) imposes a self-executing automatic stay of collection efforts against a debt-

or, which is effective upon the filing of the bankruptcy petition. 11 U.S.C. § 362(a); *see also Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir.2000). Section 362(b)(1) provides an exception such that the automatic stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). There is some disagreement between courts as to whether § 362(b)(1) is an absolute rule or whether it excludes bad faith criminal prosecutions, and there is no binding precedent in this circuit. The overwhelming majority approach is just as the bankruptcy court concluded: that § 362(b)(1) is an absolute rule that categorically excepts criminal prosecutions from the automatic stay. *See Sylvestre v. Safeway, Inc.*, 1992 WL 111853, *1 (4th Cir. May 27, 1992) (noting that "[n]early every court that has examined the scope of § 362(b) has concluded that 'criminal action' includes all criminal actions"); *Rollins v. Smith (In re Rollins)*, 243 B.R. 540, 547 (N.D.Ga.1997) (noting that most courts that have considered scope of § 362(b)(1) exception have concluded it applies to all criminal actions regardless of motivation or purpose). Indeed, the Ninth Circuit has even reversed a prior holding that recognized a bad faith exception to § 362(b)(1), noting that other circuits had declined to follow it and that the approach was difficult to apply in practice and was at odds with the Bankruptcy Code. *In re Gruntz*, 202 F.3d at 1085.

In questions of statutory construction, we begin our analysis with the language of the statute. *Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128, 139 (1st Cir.2006). Where the plain meaning of the statute is clear, we need not look beyond the text to discern legislative intent or search for other interpretive aids. *Id.; Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 277 n. 2 (1st Cir.1999). Section 362(b)(1) provides that the filing of a bankruptcy petition does not stay "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). This language is clear, plain, unambiguous, and unequivocal. *See Simonini v. Bell (In re Simonini)*, 69 Fed.Appx. 169, 170–71 (4th Cir. 2003); *In re Gruntz*, 202 F.3d at 1085; *Pickett v. Quinn (In re Pickett)*, 321 B.R. 663, 668 (Bankr.D.Vt.2005); *Sylvestre*, 1992 WL 111853; *Bryan v. Rainwater*, 254 B.R. 273, 278 (N.D.Ala.2000).

As such, § 362(b)(1) is "a clear and straightforward declaration" that excepts all [4] criminal prosecutions of the debtor from the automatic stay with "no hint of any exception for prosecutorial purpose or bad faith." *In re Pickett*, 321 B.R. at 668; *see also In re Simonini*, 69 Fed.Appx. at 170–71; *In re Bibbs*, 282 B.R. 876 (Bankr. E.D.Ark.2002). Thus, a criminal proceeding is not subject to the automatic stay, even where it relates to debt collection or where the debtor alleges that the state is proceeding in bad faith. *See id.; In re Gruntz*, 202 F.3d at 1086; *Dovell v. The Guernsey Bank*, 373 B.R. 533, 537 (S.D.Ohio 2007); *In re Byrd*, 256 B.R. at 246; *Bryan*, 254 B.R. at 278 (holding that criminal proceeding was not stayed even where purpose may have been to collect debt); *In re West*, 1995 WL 17005063 at *2 (Bankr.S.D.Ga. June 2, 1995).

Additionally, despite the Debtor's assertion to the contrary, § 105 does not authorize the bankruptcy court to enjoin

---

**4.** As the Defendants are both agents of the state, the question of whether an individual creditor's pursuit of criminal prosecution of the debtor in an effort to recover a debt is not at issue here. *See In re Byrd*, 256 B.R. 246 (Bankr.E.D.N.C.2000) (limiting holding to prosecuting entities and not individual creditors).

criminal proceedings. *See Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43 (1st Cir.2008); *In re Simonini*, 69 Fed.Appx. at 170–71. Section 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The First Circuit has observed that § 105(a) gives bankruptcy courts broad authority to "exercise its equitable powers." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) (quoting *Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997)).

 Despite the broad language of § 105, the First Circuit has held that there are "important limitations" on a bankruptcy court's authority to act pursuant to § 105(a). *In re Nosek*, 544 F.3d at 43. Section 105(a) functions as a "catch-all" provision, effectively filling in gaps to "preserve the integrity of the bankruptcy system." *Cuevas–Segarra v. Contreras*, 134 F.3d 458, 459 (1st Cir.1998). Notably, a bankruptcy court may not apply § 105(a) in a manner that is inconsistent with another Code provision. *In re Nosek*, 544 F.3d at 43. Thus, § 105 did not authorize the bankruptcy court to enjoin the criminal proceedings against the Debtor as such action would have been in direct contravention of § 362(b)(1). *See id.; In re Simonini*, 69 Fed.Appx. at 170–71 (rejecting district court's use of § 105 to enjoin criminal proceeding and noting that equitable powers of § 105(a) are not "license for a court to disregard the clear language and meaning of the bankruptcy statute and rules").

This result does not thwart the purpose of bankruptcy. *See In re Gruntz*, 202 F.3d at 1086; *In re Almodovar*, 35 B.R. 289, 291 (Bankr.D.P.R.1983). The § 362(b)(1) exception is "consistent with the policy of making bankruptcy a means of offering relief to financially pressed debtors and not as providing a shelter from the consequences of criminal acts." 3 *Collier on Bankruptcy* ¶ 362.05 (15th ed. rev.); *see also In re Almodovar*, 35 B.R. at 291 (explaining that Bankruptcy Code was never intended to be shelter for criminal conduct). With respect to the automatic stay in particular, "Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals." *In re Gruntz*, 202 F.3d at 1086.

 Although the plain language of § 362(b)(1) renders it unnecessary to examine its legislative history, such examination only bolsters the view that applying § 362(b)(1) strictly does not frustrate the purpose of bankruptcy: "The bankruptcy laws are not a haven for criminal offenders but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R. No. 95–595, 95th Cong. 1st Sess. at 342 (1977); S.R. Rep. No. 95–989, 95th Cong.2d Sess. at 51 (1978); U.S.Code Cong. & Admin.News 1978 at 5787, 5837, 6299; *see also In re Pickett*, 321 B.R. at 668 (calling legislative intent "clear" and holding that bankruptcy court may not enjoin criminal proceeding); *Rollins*, 243 B.R. at 546–47; *In re Almodovar*, 35 B.R. at 291.

 Additionally, this result comports with strong principles of federalism.

*In re Gruntz*, 202 F.3d at 1085 ("our notion of cooperative federalism caution[s] against interference with ongoing state criminal proceedings"); *In re Simonini*, 69 Fed.Appx. at 170–71; *Dovell*, 373 B.R. at 537. State courts and prosecuting authorities are best positioned to judge whether a criminal action against a debtor is undertaken "to vindicate the public interest;" it is not the place of the bankruptcy court to interfere with said actions or "pre-judge the issue to the detriment of the state's authority to punish for violation of criminal laws if it finds the same advisable." *In re Almodovar*, 35 B.R. at 291. Moreover, regardless of the motivation of the complaining witness, once the state decides to file criminal charges, the prosecution belongs to the government, and the bankruptcy court cannot require the prosecutor to inquire into the motivation of the complaining witness. *In re Gruntz*, 202 F.3d at 1086. A prosecutor's "broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Id.* Moreover, a prosecutor's decision to indict is presumed legitimate. *United States v. Cafiero*, 292 F.Supp.2d 242, 247 (D.Mass.2003). Thus, "[I]n the absence of a clear Congressional mandate to the contrary, [federal] courts should not give an expansive reading to a statute, when such interpretation results in a significant interference with pending state criminal proceedings." *Dovell*, 373 B.R. at 537.

■ Lastly, we reach the question of whether the § 362(b)(1) exception applies to property of the estate. Again, under the well-established cannon of statutory interpretation, we begin our analysis with the language of the statute. *Phillips*, 459 F.3d at 139. "Except as provided in subsection (b) of this section," § 362(a) provides that creditors must cease debt collection efforts upon the filing of the bankruptcy petition, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). As discussed above, § 362(b)(1) excludes acts taken in connection with criminal prosecutions from the automatic stay. Taken together, then, § 362(b)(1) and § 362(a)(3) plainly state that acts to obtain possession of property of the estate undertaken in connection with a criminal prosecution are not subject to the automatic stay. As the plain meaning of § 362(b)(1) and § 362(a)(3) are clear, we need not look beyond the text to discern legislative intent or search for other interpretive aids. *See id.*; *Bonilla*, 194 F.3d at 277 n. 2.

■ Here, the Defendants' actions were undertaken in connection with a criminal proceeding against the Debtor. Lieutenant O'Reilly acted under the authority of a valid search warrant. The Debtor does not allege that the financial records seized were outside the scope of the warrant.[5] Additionally, the financial records Lieutenant O'Reilly seized were directly linked to the criminal proceedings. Moreover, the Debtor made little or no effort to access the records in order to prosecute his bankruptcy case.

It is worth noting, as well, that the state succeeded not only in indicting the Debtor on multiple counts of larceny, but in securing a conviction against him as well. He was sentenced to over seven years for his crimes. Thus, even if there were a "bad faith" exception to § 362(b)(1), the facts foreclose the Debtor from prevailing on such an argument. *See O'Brien v. Town of Agawam*, 350 F.3d 279, 292 (1st Cir. 2003) (reviewing court may affirm lower court on alternate basis that is manifest in

---

**5.** The Debtor did not include a copy of the warrant in the record on appeal.

record). The bankruptcy court, therefore, did not err in concluding that § 362(b)(1) excepted the Defendants' actions from the automatic stay, including seizure of the Debtor's financial records.

### D. Alleged Violations of Civil Rights and Abuse of Process

The bankruptcy court concluded that the Defendants were entitled to summary judgment on the counts relating to alleged civil rights violations and abuse of process because the Debtor's theories were predicated on a finding of a stay violation. The Debtor argues that the counts are separate from the stay violation allegation. The record reflects, however, that this is not the case, and that the civil rights claims are indeed predicated on the stay violation allegation.

In the complaint, the Debtor alleged that the Defendants had violated his civil rights and had committed abuse of process because the actions taken in connection with the criminal prosecution deprived him of the rights and/or privileges afforded to him under the Bankruptcy Code, and were not related to any legitimate exercise of police power or any legitimate criminal matter. Additionally, the Debtor alleged that the seizure of his financial records made it impossible to prosecute his bankruptcy case, make payments to creditors, and fully assist his counsel. Lastly, the Debtor alleged that Lieutenant O'Reilly committed abuse of process by acting in a way that was designed and intended to harass and intimidate the Debtor and compel him to pay a debt through the unlawful or illegal use of criminal process.

 These allegations are quite clearly predicated on a finding that the Defendants violated the automatic stay. In other words, if the Defendants' actions were not in violation of the stay, then they did not deprive him of his rights under the Bankruptcy Code. Indeed, at the hearing on the Defendants' motion for summary judgment, the Debtor reiterated that his allegations of civil rights violations and abuse of process were based on the theory that the criminal violation was a violation of the Debtor's rights under the Bankruptcy Code. As it has previously been established that the Defendants' actions were within the scope of the § 362(b)(1) exception, and therefore did not violate the automatic stay, the Defendants did not violate the Debtor's rights under the Bankruptcy Code, and thus there is no basis for the Debtor's allegations of civil rights violations and abuse of process. As such, the bankruptcy court did not err in granting the Defendants' motion for summary judgment on these counts.

### CONCLUSION

For the reasons set forth above, we **AFFIRM** the Order.