# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 13-6037

_____

In re: Wendell Otis Maness, also known as MO Housing Corporation, also known as Top Shop North; Carolyn Hope Maness

*Debtor*s

------------------------------

Legendary Stone Arts, LLC

*Plaintiff - Appellee*

v.

Wendell Otis Maness; Carolyn Hope Maness

*Defendants - Appellants*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Kansas City

_____

Submitted: July 25, 2013
Filed: August 29, 2013

_____

Before KRESSEL, SALADINO and SHODEEN, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

The Defendants, Wendell O. Maness and Carolyn H. Maness, appeal from a June 3, 2013, judgment of the bankruptcy court[1] dismissing their counterclaim against the Plaintiff, Legendary Stone Arts, LLC ("Legendary Stone"). The judgment was entered pursuant to an order of the bankruptcy court[2] granting Legendary Stone's motion for summary judgment on the counterclaim dated May 1, 2012. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

The pertinent facts are, for the most part, uncontroverted. Prior to bankruptcy filing, Mr. and Mrs. Maness owned MO Housing Corporation, d/b/a Top Shop North ("Top Shop"), which was involved in the business of customizing and installing granite countertops in homes. Over a number of years, the company obtained the raw material for the construction of countertops from Legendary Stone. All of the orders were placed in the name of Top Shop.

In the latter part of 2010, Top Shop had a severe downturn in business, which led Mr. and Mrs. Maness to close the business and file bankruptcy. Their voluntary Chapter 7 bankruptcy petition was filed on February 17, 2011. Legendary Stone filed the adversary proceeding from which this appeal arose on April 29, 2011. The adversary proceeding asserted that Legendary Stone supplied material and labor to Top Shop on 37 projects totaling more than $66,000.00, which went unpaid despite Top Shop receiving payment from the homeowner or contractor. Legendary Stone sought a determination from the bankruptcy court that the indebtedness due from Top

---

[1]The Honorable Cynthia A. Norton, United States Bankruptcy Judge for the Western District of Missouri.

[2]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

Shop was nondischargeable under 11 U.S.C. § 523(a)(2)(A) and that Mr. and Mrs. Maness were liable for such amounts under Missouri's lien fraud statute. MO. REV. STAT. § 429.014. The lien fraud statute makes it a felony under certain circumstances for a defendant to receive payment on a construction project and fail to pay a supplier.

The owners of Legendary Stone are Jeff Williams and Aaron Toney. In early 2011, before Mr. and Mrs. Maness filed their bankruptcy petition, Mr. Williams contacted the Jackson County prosecutor's office to relay facts of his dealings with Mr. Maness. During that conversation, he apparently brought to the attention of the prosecutor's office the Missouri lien fraud statute. Subsequently, on February 15, 2011, Messrs. Williams and Toney went to the Independence, Missouri, police department and filed a criminal complaint against Mr. Maness. Two days later, the bankruptcy petition was filed by Mr. Maness.

After the criminal complaint was filed with the police department, neither Mr. Williams nor Mr. Toney had any further contact with the Jackson County prosecutor's office. On August 25, 2011, Mr. Maness was charged with theft under the lien fraud statute and a warrant for his arrest was issued. He was arrested on September 9, 2011, booked, and released on a $5,000.00 signature bond.

The criminal case was handled by Maj. Terry Storey and Det. Steve Breshears of the Independence police department. Maj. Storey was an acquaintance of Mr. Williams but testified that his familiarity with Mr. Williams had no effect on the criminal case against Mr. Maness, and that the case was not handled any differently than any other case. Maj. Storey also testified in his deposition that no one from Legendary Stone ever brought up the issue of restitution or offered to drop the criminal complaint in exchange for payment.

Mr. Williams initiated several contacts with the Independence police department after the date the bankruptcy petition was filed. Specifically, Mr. Williams

called Maj. Storey approximately six times and emailed Det. Breshears twice. As far as the phone calls were concerned, Maj. Storey testified in his deposition that the phone calls from Mr. Williams were to check on the status of the criminal case and that it was not unusual for him to receive such phone calls from victims of crime. The first email from Mr. Williams to Det. Breshears was dated March 2, 2011, and stated as follows:

> I wanted to let you know that Mr. Maness will be at the Federal Court House, room 2110B, 400 East 9th St., KCMO, on March 25, 2011, at 10:15 am. He has a meeting of Creditors scheduled at that time. I did not know if this information would be helpful to you, but I am certain he will be there.
> Thank you for your efforts on this case.

Det. Breshears wrote a one-line response thanking Mr. Williams for the information. The second email from Mr. Williams stated in its entirety:

> I know you forwarded the case to the prosecuting attorney, but I wanted to touch base with you to see if they needed any additional information from us, regarding the case. As of today, I have not been contacted by the prosecutor's office. Obviously, I am anxious to see the case move forward, and am wondering if you had any new information on the status of the case.

The response of Det. Breshears stated that non-violent cases take some time to work through the system and that he would let Mr. Williams know if the prosecutor needed any additional information. Mr. Toney was apparently only involved in an email exchange to set up a meeting.

On December 6, 2011, the Jackson County prosecutor dismissed the criminal charges against Mr. Maness. Prior to that dismissal, Mr. and Mrs. Maness filed a

counterclaim against Legendary Stone in the adversary proceeding asserting that Legendary Stone's pursuit of the criminal complaint and Mr. Williams' contacts with the Independence police department were attempts to collect a debt and willful violations of the automatic stay.

Subsequently, after discovery, including depositions, Legendary Stone filed a motion for summary judgment on the counterclaim. Briefs were filed and on May 1, 2012, the bankruptcy court entered its order granting summary judgment in favor of Legendary Stone and dismissing the counterclaim of Mr. and Mrs. Maness. They attempted to appeal that summary judgment order, but the appeal was dismissed for lack of jurisdiction since it was not final until a judgment was entered disposing of all claims in the adversary proceeding.

On September 13, 2012, the bankruptcy court conducted a trial on the complaint – the attempt by Legendary Stone to have its claim against Mr. Maness determined to be nondischargeable. After Legendary Stone presented its case, the bankruptcy court granted the motion of Mr. and Mrs. Maness for judgment on partial findings and dismissed the complaint. Specifically, the bankruptcy court determined that Legendary Stone's claim for money due was against the business, MO Housing Corporation, d/b/a Top Shop (which was not in bankruptcy), and not as to Mr. and Maness personally. The bankruptcy court subsequently entered its judgment and this appeal followed. The only issue on appeal is the bankruptcy court's grant of summary judgment in favor of Legendary Stone and against Mr. and Mrs. Maness on their counterclaim. Legendary Stone did not appeal the bankruptcy court's dismissal of its dischargeability cause of action.

<u>STANDARD OF REVIEW</u>

We review a bankruptcy court's grant of summary judgment de novo, *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011) (citing *Anderson v.*

*Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)). When an appellate court reviews a trial court's entry of summary judgment de novo, it uses the same standard applied by the trial court pursuant to Federal Rule of Civil Procedure 56(c). *Bremer Bank v. John Hancock Life Ins. Co.*, 601 F.3d 824, 829 (8th Cir. 2010). Under Rule 56(c), summary judgment is proper if the pleadings, affidavits, and other evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings; self-serving allegations or mere assertions of disputed fact are insufficient to defeat the motion. *Matsushita Elec. Indus. Co.v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bass v. SBC Commc'n, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).

## DISCUSSION

Mr. and Mrs. Maness argue that the bankruptcy court erred in granting summary judgment because genuine issues of fact existed as to the credibility of witnesses and the intent of the representatives of Legendary Stone during numerous post-petition contacts with the Independence police department. We disagree.

11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition operates as a stay of any act to collect or recover a claim against the debtor that arose before the commencement of the bankruptcy case. However, 11 U.S.C. § 362(b)(1) provides that § 362(a) does *not* operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." As such, § 362(b)(1) is "a clear and straightforward declaration" that excepts all criminal prosecutions of the debtor from the automatic stay with "no hint of any exception for prosecutorial purpose or bad faith." *Bartel v. Walsh (In re Bartel)*, 404 B.R. 584, 590 (B.A.P. 1st Cir. 2009) (citing *Pickett v. Quinn (In re Pickett)*, 321 B.R. 663, 668 (Bankr. D. Vt. 2005); *Simonini v.*

*Bell (In re Simonini)*, 69 Fed. Appx. 169, 170-71 (4th Cir. 2003); *In re Bibbs*, 282 B.R. 876 (Bankr. E.D. Ark. 2002)).

In so holding, the First Circuit Bankruptcy Appellate Panel recognized that an individual creditor's pursuit of criminal prosecution of a debtor in an effort to recover a debt, as opposed to a governmental entity pursuing prosecution, could be viewed differently. *Id.* Indeed, in *Pearce v. E.L.W. Corp. d/b/a Weber Concrete (In re Pearce)*, 400 B.R. 126 (Bankr. N.D. Iowa 2009), a bankruptcy court held that the acts of non-governmental individuals do not fall within the criminal proceedings exception to the automatic stay. *Id.* at 132. Under that view, a creditor's action in encouraging a criminal prosecution with the intent of securing payment in preference over other creditors fits within the definition of an act precluded by the automatic stay. *Id.* at 133 (citations omitted). Other courts disagree and assert that the statute is absolute on its face and that all criminal prosecution is excepted from the automatic stay, including those having a purpose to collect a debt. *See Tow v. Henley (In re Henley)*, 480 B.R. 708, 805-06 (Bankr. S.D. Tex. 2012) (discussing cases on both sides of the issue, disagreeing with cases such as *Pearce* and holding that the language of § 362(b)(1) is unequivocal).

Ultimately, the bankruptcy court and the parties proceeded on the premise that, while criminal prosecution of a debtor is excepted from the automatic stay, there is an exception to the exception where the "principal purpose" of the prosecution is to collect a dischargeable debt. *See Underwood v. DeLay (In re DeLay)*, 48 B.R. 282, 286 (W.D. Mo. 1984) (citing *Johnson v. Lindsey*, 16 B.R. 211 (Bankr. M.D. Fla. 1981)). On appeal, neither party disputes the bankruptcy court's view of the applicable law.

Instead, the argument of Mr. and Mrs. Maness on appeal is that, in light of the numerous post-petition contacts between the principals of Legendary Stone and the Independence police department, the bankruptcy court erred in granting summary

judgment in ruling that no genuine issues of fact existed as to intent. Ultimately, Mr. and Mrs. Maness are *not* asking us to decide whether Legendary Stone, through its principals, violated the automatic stay with their post-petition contacts. Rather, Mr. and Mrs. Maness assert that a trial is necessary to determine the intent of the principals of Legendary Stone in making post-petition contacts with the police. That argument fails as a matter of summary judgment law.

The counterclaim was filed against Legendary Stone by Mr. and Mrs. Maness. Legendary Stone, the counterclaim defendant, filed a motion for summary judgment. As evidentiary support for its motion for summary judgment, it produced evidence in the form of depositions of Mr. Williams of Legendary Stone and Maj. Storey and Det. Breshears of the Independence police department. The deposition testimony was devoid of any indication that the representatives of Legendary Stone were attempting to use the criminal prosecution to collect a debt. Quite to the contrary, the evidence was that the phone calls were nothing more than routine checks on the status of the case and to provide potentially relevant information. In particular, the police officers each testified that restitution to the creditor was never mentioned in any of the conversations with Legendary Stone's representatives.

Further, the bankruptcy court pointed out that there had been no suggestion that Messrs. Williams or Toney ever contacted Mr. Maness directly or indirectly, pre- or post-petition, to threaten that they would pursue criminal charges unless payment was made, and there is no evidence in the record to dispute that finding. Mr. Williams testified in his deposition that his continued interest in the criminal proceeding post-petition was not to collect the debt. Instead, it was "[t]o stop it from happening to someone else. I was the victim of a crime. I wanted the criminal brought to justice."

By putting forth the foregoing evidence, Legendary Stone met its initial burden of proof – that it did not, through its principals, intentionally try to collect a debt in violation of the automatic stay. As the bankruptcy court noted, the burden then shifted

-8-

to Mr. and Mrs. Maness to come forward with facts supporting a finding that Legendary Stone's intent in pursuing the criminal prosecution was to collect a debt from Mr. Maness. We agree with the bankruptcy court that Mr. and Mrs. Maness have failed to do so.

At oral argument, counsel for Mr. and Mrs. Maness argued that we should look at the "totality of the circumstances" to infer that an intent to collect a debt *could* have been the motivating factor for Legendary Stone's representatives and, therefore, a trial should be had to determine their intent. In their view, the totality of the circumstances include: (i) the fact that Legendary Stone commenced an adversary proceeding to hold the debt nondischargeable; (ii) that Mr. Williams purportedly knew that restitution was a potential remedy in a criminal proceeding; (iii) that Mr. Williams brought the lien fraud statute to the attention of the Independence police department; and (iv) the sheer number of contacts with the police department regarding the prosecution.

We disagree. In responding to a motion for summary judgment which has been supported with detailed testimony sufficient to defeat the claim, Mr. and Mrs. Maness must do more than provide innocuous facts from which one could "infer" that someone "might" have an intent to collect a debt. *Matsushita,* 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "A party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir. 1985). A reasonable inference is one that supports a viable legal theory and it must be supported by significant probative evidence. *United Mortg. Corp. v. Mathern (In re Mathern)*, 137 B.R. 311, 322 (Bankr. D. Minn. 1992). Mr. and Mrs. Maness failed to submit any probative evidence of intent to collect a debt through the criminal proceedings.

The bankruptcy court found that the response of Mr. and Mrs. Maness to the summary judgment motion was "actually devoid of any affirmative facts." We agree with the bankruptcy court that no genuine issue of material fact remains for trial. It is undisputed that the criminal prosecution was commenced prior to the bankruptcy filing. Therefore, the filing of the criminal complaint was not a stay violation. Further, criminal prosecution is clearly excepted from the automatic stay, and we note that the exception does not contain any further express exceptions or conditions. Legendary Stone submitted evidence to show that it had no post-petition contact with Mr. and Mrs. Maness, and that all of its contacts with the Independence police department were status-related. There is nothing in the record to suggest that representatives of Legendary Stone sought, asked for, or pushed for criminal restitution as part of the criminal prosecution. In fact, the evidence shows that restitution was never mentioned.

It seems that Mr. and Mrs. Maness would have us establish a rule that if restitution to the victim is a potential remedy of a criminal prosecution, the crime victim must have no further contact with the prosecuting authorities.[3] That is simply not the law. Even if we assume that the holding in *Pearce* – that the acts of non-governmental individuals do not fall within the criminal proceedings exception to the automatic stay – is correct, it is distinguishable. Here, the criminal action, i.e., the criminal complaint by Legendary Stone, was commenced pre-petition. Further, the bankruptcy court found that Legendary Stone carried its burden and that the record was wholly devoid of any indication that Messrs. Williams and Toney were attempting to use the criminal prosecution to collect a debt. On our de novo review of the record, we agree.

---

[3]In fact, at the bankruptcy court Mr. and Mrs. Maness argued that upon filing bankruptcy, Legendary Stone's representatives had the affirmative duty to become non-cooperative witnesses to avoid violating the automatic stay. The bankruptcy court noted that they did not cite a single authority to support that contention and they wisely dropped that argument on appeal.

Mr. and Mrs. Maness had the opportunity to conduct written discovery and depose all of the persons involved. Nevertheless, after being presented with Legendary Stone's detailed evidence, they failed to include any deposition testimony, interrogatory answer, admissions, or document in the record to support their claim that Legendary Stone or its representatives knew of or were motivated by the restitution portion of the statute.

## CONCLUSION

The applicable statute is clear – commencement or continuation of a criminal action or proceeding is not subject to the automatic stay. Legendary Stone met its burden of presenting detailed evidence that its representatives were not attempting to use the criminal prosecution to collect a debt. The burden then shifted to Mr. and Mrs. Maness to present contrary facts and they failed to do so. Therefore, we affirm the bankruptcy court.

_____