**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GEORGE C. BOYD; GAIL P. BOYD;
EARL WIGGINS; SHELLY
WIGGINS, also known as Bud & Son
Distributing,

        Plaintiffs-Appellees,

v.

KMART CORPORATION,

        Defendant-Appellant.

No. 96-7065
(D.C. No. CV-95-249-P)
(E.D. Okla.)

ORDER AND JUDGMENT[*]

Before PORFILIO, ANDERSON, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Kmart Corporation appeals from a judgment entered by the magistrate judge[1] on a jury verdict awarding plaintiffs, collectively known as Bud & Son Distributing, $288,835.77 for breach of contract. Kmart had disavowed a renewable contract that gave Bud & Son the exclusive right to collect waste tires generated by a group of Kmart auto service facilities. The magistrate judge granted Bud & Son partial summary judgment on various liability issues before trial, leaving only the computation of damages for the jury's determination. Following the denial of its motion for new trial/remittitur, Kmart appealed.

Kmart raises eight issues for review, six relating to summary judgment matters, a seventh challenging the jury verdict, and the last objecting to a post-judgment procedural ruling. Kmart contends the magistrate judge erred in finding as a matter of law that (1) regional manager Herb Rone had apparent authority to bind Kmart to the Bud & Son contract, (2) Kmart breached the contract, (3) Kmart remained liable for the breach after Rone's demotion, (4) Kmart's contractual obligations continued after it sold all of its automotive service centers, (5) Kmart remained liable into the first extended year of the contract despite Rone's demotion prior to the extension, and (6) Kmart's liability continued through the remainder of the contract. Kmart also asserts that (7) the

---

[1]     Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to proceed before the magistrate judge. Accordingly, our jurisdiction arises under § 636(c)(3) and 28 U.S.C. § 1291.

determination of damages was fatally flawed, and (8) the magistrate judge erred in denying its request to supplement the summary judgment record after entry of judgment on the jury verdict. As explained below, we affirm the determination that Kmart breached a binding contract (issues 1 & 2), and that its demotion of the contracting manager had no effect on the continuing validity (and, hence, extendibility) of the contract (issues 3, 5-6). However, we hold that Kmart's liability ceased upon its good faith sale of the facilities involved (issue 4), necessitating a redetermination of damages and, thus, obviating consideration of Kmart's objection to the existing award (issue 7). Finally, we dismiss Kmart's challenge to the denial of its post-judgment motion to supplement the pretrial summary judgment record (issue 8).

## I

We review the rulings made on summary judgment de novo. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). On the basic issues of liability, we are in substantial agreement with the analysis expressed in the magistrate judge's pretrial order of January 31, 1996, which relies on a number of pertinent, uncontroverted facts that need not be repeated in detail here. Suffice it to say that, in accordance with his managerial title and function, Herb Rone was authorized to select the suppliers and contractors required by the service centers for which he was responsible, he executed an exclusive contract with Bud & Son

for the disposal of all waste tires for those centers, and nine months later, after entering into a country-wide tire disposal agreement with Lakin General Corp., Kmart directed all of its managers, including Rone, to cancel any conflicting individual contracts. In our view, these facts establish Rone's apparent authority to execute the Bud & Son contract and Kmart's subsequent breach thereof.

**A**

Kmart argues that, despite general managerial authority to contract for service center needs, Rone did not have even apparent authority to agree to the terms of the particular contract at issue, because it transgressed an internal organizational limitation on agreements extending beyond a manager's tenure. In essence, Kmart attempts to cloak in the garb of apparent authority the following novel legal defense: every contract with Kmart automotive service centers tacitly incorporated the overriding condition that--regardless of what the parties actually agreed to on the matter--the contract's enforceable term was inherently limited to the tenure of the particular individual managing the affected service centers. Kmart does not cite any precedent for this dubious proposition, let alone case law underwriting its position in the vocabulary of apparent authority.

We do not gainsay Kmart's right to impose and enforce exceptions to the contracting authority granted its managers, but such special limitations are effective only if made known to those with whom they conduct business. See

<u>Oaks v. Motors Ins. Corp.</u>, 595 P.2d 789, 791-92 (Okla. 1979) ("Though the powers of an agent may be limited by definite restrictions on his authority, . . . such powers are prima facie coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals."); <u>see also</u> <u>Ocean Accident & Guar. Corp. v. Denner</u>, 250 P.2d 217, 220-21 (Okla. 1952) ("If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business; and this rule applies peculiarly to corporations which act only through their officers and agents." (quotations omitted)).  When, as here, competent evidence shows only the grant of general contracting authority without notice of an alleged exception thereto,[2] apparent authority is properly found as a

---

[2]      Kmart cites two assertedly contrary items of evidence.  Neither is material. First, Kmart attempts to create a factual dispute by citing *its own* assertion that *plaintiff George Boyd* "was aware that a Zone Manager could not bind another Zone Manager."  Appellant's Appendix (App.) I at 48.  Ambiguities aside (is the asserted managerial independence direct or indirect, geographic or temporal?), summary judgment may not be opposed with inadmissible assertions of matters beyond personal knowledge.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Gross v. Burggraf Constr. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995).  Second, Kmart cites a deposition excerpt in which Rone claims he had told Boyd he lacked authority to execute the contract.  As discussed later, we dismiss Kmart's appeal from the order refusing to supplement the summary judgment record with this excerpt.  Thus, the evidence is outside the scope of review.  In any event, Rone's vague, qualified statement that he "thinks" at some time he told Boyd he lacked authority to make such a long-term commitment, though he has no "specific recollection" of doing
                                                                    (continued...)

matter of law.  See, e.g., Home State Bank v. Sullins, 178 P.2d 86, 88 (Okla. 1947) (apparent authority issue unnecessarily given to jury where no evidence restriction on agent's authority ever communicated); Elam v. Town of Luther, 787 P.2d 1294, 1296 (Okla. Ct. App. 1990) (reversing trial court and holding general contracting agent had "express, apparent and/or implied authority" to execute particular contract at issue).

**B**

Kmart insists that, in any event, the evidence did not establish its *breach* of the Bud & Son contract, for several reasons.  First, Kmart contends "[t]here was no testimony from the parties who negotiated and executed the Lakin Contract concerning which Kmart automotive service centers the Lakin Contract was intended to cover, nor was there any testimony concerning from what locations Kmart intended to offer Lakin tires."  Brief of Appellant at 25.  Kmart's own memorandum, issued April 4, 1995, clearly fills the alleged gap in the evidence. The memorandum states in unequivocal terms that "[a]ll stores in the lower 48 states are included," that "[a]ll of the used, junk, take-off and adjustment tires

[2](...continued)
so, see App. II at 604-06, is insufficient to dispute Boyd's unequivocal statement, consistent with the terms of the parties' agreement, that Rone specifically assured Boyd of his authority when they executed the contract, an assurance sought by Bud & Son to justify substantial anticipatory expenditures, see App. I at 58.

-6-

will be picked up by Lakin," and that "all other used tire haulers currently being used are to be canceled as of May 1, 1995." App. I at 42.

Second, Kmart asserts that under the Lakin contract, "Kmart did not have to offer Lakin all its used tires," Brief of Appellant at 25, evidently maintaining that this latitude with respect to its Lakin obligations avoided a breach of its existing agreement with Bud & Son. In short, Kmart contends its execution of the Lakin contract covering the same service already subject to the *exclusive* Bud & Son agreement--which it promptly ordered canceled to accommodate the Lakin contract--did not breach the earlier agreement. This implausible contention is not supported by reasoned argument or relevant authority. See generally Brownlee v. Lear Siegler Management Servs. Corp., 15 F.3d 976, 977 (10th Cir. 1994) (adequate appellate advocacy requires supporting authority and/or developed argument). Indeed, analogous case law undercuts Kmart's position. Cf. EKE Builders, Inc. v. Quail Bluff Assocs., 714 P.2d 604, 608 (Okla. Ct. App. 1985) (disavowal of contractual relationship and execution of conflicting agreement "amounted to a repudiation . . . justifying plaintiff to treat the contract as totally breached and to immediately sue for damages").

Third, Kmart cites evidence indicating that Bud & Son picked up some used tires from Kmart after the May 1 cancellation date. No authority or persuasive argument is provided to link this factual assertion to the challenged ruling

regarding breach. While the cited evidence may be pertinent on the issue of damages, it does not nullify the legal effect of the uncontroverted actions taken by Kmart in clear breach of the parties' exclusive agreement.

## II

Kmart contends the following provision from the Bud & Son agreement conditioned performance on Herb Rone's continued employment as manager of the affected service centers:

> Now therefore K-Mart Corporation does hereby grant Bud & Son Distributing the exclusive right to dispose of its waste tires from the stores under the supervision of District Manager, Herb Rone which are listed on Exhibit "A" attached to this contract and which come into existence in this same area supervised by District Manager, Herb Rone.

App. I at 39. Thus, Kmart argues, by demoting Rone ten days after ordering cancellation of the Bud & Son agreement, it extinguished any further obligations and effectively curtailed its contractual liability. The magistrate judge rejected this argument, holding that the Rone references simply provided a means to identify, in shorthand terms, the service centers covered by the agreement. As this ruling involves questions of law, see Lewis v. Sac & Fox Tribe, 896 P.2d 503, 514 (Okla. 1994) (ambiguity of contract and meaning of unambiguous contract are legal issues for courts to resolve), cert. denied, 116 S. Ct. 476 (1995), our review is de novo, see Bank of Oklahoma v. Muscogee (Creek) Nation, 972 F.2d 1166, 1171 (10th Cir. 1992).

-8-

We agree with the magistrate judge that the quoted provision is not reasonably susceptible to the gloss proffered by Kmart, which pries out of the language a peremptory condition that, given its significance to the value and stability of a fairly long-term contract, one would expect to be directly and distinctly stated. Further, Kmart's construction of the quoted language is at odds with a later provision binding the contracting parties' assigns. On Kmart's reading, the latter provision must entail the unstated and implausible qualification, "but only if Kmart's assignee happens to hire Herb Rone and employ him in the same capacity he presently has with Kmart." Finally, absent clear linguistic support, the magistrate judge was properly loathe to credit a construction of the agreement giving Kmart unilateral power to void its obligation simply by transferring, demoting, or terminating an employee. While perhaps none of these difficulties alone would foreclose Kmart's interpretation, taken together and considered in light of the magistrate judge's manifestly reasonable, contrary construction, they persuade us that the magistrate judge correctly determined the unambiguous meaning of the disputed provision.

Thus, Rone's employment as manager of the service centers was not a condition to the continuing validity of the Bud & Son contract. Consequently, his demotion had no effect on either party's performance obligations, nor did it

abrogate Bud & Son's express right to extend the contract for an additional five years.

### III

The magistrate judge deemed Kmart's sale of its automotive service operation in November 1995 irrelevant to its liability, because by that time the Bud & Son agreement had already been breached. In the magistrate judge's stated view, a contractual liability cannot be nullified by the termination or sale of the affected business. Actually, contracts differ in the latitude they afford parties to extinguish their obligations through such actions and, as explained below, the Bud & Son contract falls into a unique category in this respect. Given that contract damages may only compensate for lost benefits the plaintiff would have obtained absent the breach, see Okla. Stat. Ann. tit. 23, § 96; Ferrell Constr. Co. v. Russell Creek Coal Co., 645 P.2d 1005, 1010 (Okla. 1982); B & B Lines, Inc. v. Ryan Freight Lines, Inc., 601 P.2d 1207, 1209 (Okla. Ct. App. 1979), if Kmart's obligation would have expired upon the sale of its automotive service operation, extending its liability beyond that time would result in a damage award improperly exceeding compensable loss, see, e.g., Osborn v. Commanche Cattle Indus., Inc., 545 P.2d 827, 831-32 (Okla. Ct. App. 1975) (damages for breach of contract that could have been terminated by either party upon thirty days' notice may not include lost profits beyond thirty-day notice period).

The agreement at issue, which grants Bud & Son exclusive access to Kmart's waste tires without specifying a quantity term, is a fairly straightforward example of an "output" contract, pursuant to which the obligor's duty to supply the promised commodity is quantified (and therefore limited) by reference to its production thereof.[3]  See generally E. Allan Farnsworth, Farnsworth on Contracts § 7.17, at 371 (Supp. 1996) (describing "output" and "requirements" contracts). The fact that the agreement concerns a mere by-product of Kmart's operations does not alter its character in this respect.  See 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts § 6.7, at 279-80 (Rev. ed. 1995).

Generally, a reduction in output (or requirements), even the complete cessation of business, is permissible under such contracts, so long as the change is effected in good faith.  See Farnsworth, supra § 7.17, at 371.  This court has previously applied this general rule in Oklahoma contract cases, see, e.g., M.W. Kellogg Co. v. Standard Steel Fabricating Co., 189 F.2d 629, 632 (10th Cir. 1951); Southwest Natural Gas Co. v. Oklahoma Portland Cement Co., 102 F.2d 630, 632-33 (10th Cir. 1939), and the state legislature expressly codified it in the sales context by adopting the pertinent Uniform Commercial Code provision, see Okla. Stat. Ann. tit. 12A, § 2-306(1) & UCC comment 2 ("good faith variations

---

[3]    From another perspective, the agreement could be characterized, without any alteration in the resulting analysis, as a "requirements" contract, with Kmart being the buyer of a service quantified in terms of its need for tire disposal.

from prior requirements are permitted even when the variation may be such as to result in discontinuance").

Bud & Son argues for a deviation from this general rule, insisting that two other decisions of this circuit, Central States Power & Light Corp. v. United States Zinc Co., 60 F.2d 832 (10th Cir. 1932), and Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 874 F.2d 1346 (10th Cir. 1989), direct us to impose on Kmart an implied obligation to remain in the auto service business for the duration of the parties' agreement. Neither of these decisions is apposite here. Central States implied such an obligation because the contract at issue included specific minimum and maximum quantity parameters and, consequently, "differ[ed] from the usual instance of an agreement where the vendor is to furnish all of a commodity required by vendee." 60 F.2d at 834 (Cotteral, J., opinion); id. at 835 (Lewis, J., concurring) (noting, for same reason, "this is not a requirement contract"). Similarly, Tri-State, a Wyoming case, cited the "conventional rule" that "'good faith variations'" in requirements are allowed "'even to the extent of a determination to liquidate or discontinue the business,'" 874 F.2d at 1358 (quoting HML Corp. v. General Foods Corp., 365 F.2d 77, 81 (3d Cir. 1966)), and only deviated from the rule because the "unique" nature of the contract, see id. at 1355-57, 1359-60 (noting interrelationship of parties and involvement of government regulatory agency), took the case out of the "routine"

or "commonplace" requirements situation, id. at 1359-60. There is nothing in the present case corresponding to such exceptional circumstances. Indeed, the only uncommon factor here, that the commodity involved was a mere by-product of Kmart's automotive service operation, *fortifies* our adherence to the general rule permitting good faith cessation of business:

> This fact . . . makes it less likely that [Kmart] has promised, by implication or otherwise, to produce a minimum amount or to continue to carry on the work of production for a stated time. Ordinarily, the seller would wish to make the duty to sell a mere by-product conditional upon the exigencies of the main business; the seller would not wish to be bound to let the tail wag the dog.

Corbin, supra § 6.7, at 279-80 (footnote omitted).

Accordingly, we may affirm the magistrate judge's decision extending Kmart's liability beyond the date it sold its entire automotive service operation only if the evidence demonstrates as a matter of law that the sale constituted a bad faith effort by Kmart to circumvent its obligations with respect to the particular service centers covered by the Bud & Son agreement. However, Bud & Son, which has relied exclusively on its theory of implied obligation, has not alleged, much less substantiated, any such claim of bad faith.[4] Consequently, we must

---

[4] The only pertinent evidence of record appears to be the unchallenged affidavit of Joseph Collins, Kmart Vice President for Strategic Business Integration and Productivity Improvement, stating that the line of automotive service centers had been sold as "part of Kmart's ongoing efforts to divest itself of non-core businesses so that Kmart could concentrate its efforts and resources

(continued...)

remand this case for a redetermination of damages excluding any assessment of Bud & Son's anticipated profits for the years following Kmart's sale of its automotive service operation.

**IV**

Finally, Kmart challenges the denial of its post-judgment motion to supplement the record relating to the summary judgment proceedings. We conclude we lack jurisdiction over this ruling and, therefore, dismiss this portion of the appeal. See generally Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (every federal appellate court has a special obligation to satisfy itself of its own jurisdiction, even if parties do not raise the issue).

Fed. R. App. P. 3(c) requires that every notice of appeal "designate the judgment, order, or part thereof appealed from." Further, "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review. Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." Smith v. Barry, 502 U.S. 244, 248 (1992). Thus, this court has frequently dismissed appellate challenges to undesignated rulings, especially when other particular orders were specified in the notice and these orders did not analytically subsume the omitted

---

[4](...continued)
on its core business of operating discount retail stores." App. I at 125. There is nothing indicative of bad faith vis a vis Bud & Son in that statement.

rulings.  See, e.g., Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990); Averitt v. Southland Motor Inn, 720 F.2d 1178, 1180-81 (10th Cir. 1983); Scaramucci v. Dresser Indus., Inc., 427 F.2d 1309, 1318 (10th Cir. 1970); cf. Jones v. Nelson, 484 F.2d 1165, 1168 (10th Cir. 1973) (appeal from denial of new trial motion properly encompassed prior judgment probed by that motion); Herron v. Rozelle, 480 F.2d 282, 285 (10th Cir. 1973) (same; also noting general rule that appeal from final judgment subsumes all prior rulings "producing the judgment").

Kmart's notice of appeal designates for review:  "the Order granting Plaintiffs' Motion for Summary Judgment, dated January 31, 1996, the final judgment entered in this matter on the 8th day of February, 1996, and the Order denying Defendant's motion for new trial and/or motion for remittitur, dated May 10, 1996."  Appellant's Docketing Statement attach. 3.  Absent from this designation is any reference to the magistrate judge's order of March 26, 1996, denying Kmart's motion to supplement the summary judgment record (filed after, and thus not addressed by, Kmart's new trial motion).  As this collateral ruling is not subsumed by any of the specified decisions, it is barred from review.

The judgment entered by the magistrate judge for the United States District Court for the Eastern District of Oklahoma is AFFIRMED in part and REVERSED in part, and the cause is REMANDED for further proceedings consistent herewith.

Entered for the Court

Stephen H. Anderson
Circuit Judge