COUSINS INTERNATIONAL FOOD, CORP., a/k/a IHOP Caguas, and CIF Barceloneta Corp., a/k/a IHOP Barceloneta, Debtors.

Encanto Restaurants, Inc., Plaintiff–Appellant,

v.

Luis S. Aquino Vidal, Olga M. Vidal, Héctor A. Cortés Babilonia, and Guillermo D. Rodríguez Serrano, Defendants–Appellees.

BAP NO. PR 16–034
Bankruptcy Case No. 12–08567–MCF,
Bankruptcy Case No. 12–08570–
MCF (Consolidated)
Adversary Proceeding No.
14–00030–MCF

United States Bankruptcy Appellate Panel of the First Circuit.

March 21, 2017

**452**

Hermann D. Bauer Alvarez, Esq., Nay-uan Zouairabani Trinidad, Esq., and Gabriel L. Olivera Dubón, Esq., on brief for Plaintiff–Appellant.

Jacqueline E. Hernandez Santiago, Esq., on brief for Defendants–Appellees.

Before Bailey, Harwood, and Fagone, United States Bankruptcy Appellate Panel Judges.

Fagone, U.S. Bankruptcy Appellate Panel Judge.

Encanto Restaurants, Inc. ("Encanto"), the purchaser of substantially all of the assets of the chapter 11 debtor, Cousins International Food, Corp., a/k/a IHOP Caguas (the "Debtor"), appeals from the bankruptcy court's June 14, 2016 Opinion and Order (the "June 2016 Order").[1] Encanto also appeals from the bankruptcy court's June 15, 2016 Judgment (the "Judgment"). By its appeal, Encanto attempts to challenge two refusals by the bankruptcy court: one relating to Encanto's requests for relief under § 362, and a second relating to its requests for relief under a certain sale order (the "Sale Order").[2]

---

**1.** In that order, the bankruptcy court: (1) denied Encanto's request for reconsideration of the September 23, 2015 order (the "September 2015 Order"), denying the motion for partial summary judgment (the "Partial Summary Judgment Motion") filed by Encanto, the Debtor, and CIF Barceloneta Corp. ("CIF"), against the defendants-appellees, Luis S. Aquino, a minor, and his mother, Olga M. Vidal Rodríguez (the "Aquinos"), and their attorneys, Héctor A. Cortés Babilonia and Guillermo D. Rodríguez (the "Attorneys") (collectively, the "Defendants"), on their Amended Complaint; (2) denied Encanto's second request for the entry of summary judgment in its favor (the "Second Summary Judgment Motion"); and (3) granted the Defendants' cross-motion for summary judgment on the Amended Complaint.

**2.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101 et seq. All references to "Rule or Rules" are to the Federal Rules of Civil Procedure. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Encanto lacks standing to pursue an appeal from the June 2016 Order and the Judgment to the extent that those rulings denied Encanto's requests for relief for alleged violations of § 362's automatic stay. Further, the bankruptcy court committed no error when it declined to grant Encanto relief for alleged violations of the Sale Order. Thus, we **DISMISS** a portion of this appeal for lack of standing and, as to the remainder of the appeal, we **AFFIRM** the bankruptcy court's orders.

## BACKGROUND

### I. The Local Court Action

The Debtor, an International House of Pancakes ("IHOP") franchise operator, employed Luis S. Aquino ("Luis") for several months in 2011. In September 2011, the Aquinos, represented by the Attorneys, filed a complaint against the Debtor (the "Local Court Action") in the Commonwealth of Puerto Rico, Court of First Instance in Arecibo (the "Local Court"), alleging that the Debtor unlawfully terminated Luis' employment. In its answer to the Aquinos' complaint, the Debtor denied any wrongdoing and asserted a number of affirmative defenses.

### II. The Chapter 11 Filing

In October 2012, the Debtor filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the District of Puerto Rico.[3] The Debtor did not disclose the pendency of the Local Court Action in its Statement of Financial Affairs or list the Aquinos as creditors in its Schedules. Therefore, the Aquinos did not receive notices regarding the proceedings and deadlines in the Debtor's bankruptcy case.

On November 15, 2012, counsel for the Debtor filed an "informative motion" in the Local Court Action (the "Informative Motion"), indicating that she had learned "through the press" that the Debtor had filed a chapter 11 petition. In an order entered on December 5, 2012 (the "December 2012 Order"), the Local Court directed the Debtor to submit evidence of its bankruptcy filing and to prove that it listed Luis as a creditor in its bankruptcy case. The Debtor did not comply with that order.

### III. The Sale Motion

On December 28, 2012, the Debtor, CIF, and Encanto filed an "urgent joint motion" with the bankruptcy court seeking judicial approval of the sale to Encanto of substantially all of the Debtor's assets, including two IHOP restaurants (the "Restaurants"), free and clear of all liens, claims, interests, and encumbrances, pursuant to § 363 and § 365 (the "Sale Motion"). Additionally, they requested a determination that Encanto was a good faith purchaser. The Asset Purchase Agreement accompanying the Sale Motion provided that Encanto would not assume or be liable for any obligations of the Debtor, including any employee liabilities or causes of action resulting from the Debtor's operation of the Restaurants. After a hearing, on February 26, 2013, the bankruptcy court entered an order approving the Asset Purchase Agreement (as amended) and the Sale Order, thereby approving the proposed sale. The Sale Order provided, inter alia, that Encanto would not be "liable, either directly or indirectly, as successor, transferee or otherwise, for any liabilities or interests of the Debtor[ ] ... as a result of the sale or purchase of the Assets or employment of

---

**3.** On the same date, CIF also filed a voluntary petition for chapter 11 relief. Cousins and CIF were later substantively consolidated. However, CIF was not a defendant in the Local Court Action.

any former employee of the Debtor ...." Pursuant to Encanto's subsequent motion, the bankruptcy court extended the original sale date to March 13, 2013. The docket reflects that the Aquinos never received notice of the bankruptcy proceedings and orders.

## IV. The Local Court Judgment

Meanwhile, as the bankruptcy proceedings advanced, so, too, did the Local Court Action. On January 18, 2013, the Defendants requested the entry of a default judgment against the Debtor in the Local Court Action due to the Debtor's various omissions, including its failure to comply with the December 2012 Order. Thereafter, the Local Court scheduled a pretrial conference, at which the Debtor failed to appear. Accordingly, the Local Court entered a judgment against the Debtor in May 2013 (the "Local Court Judgment"); the following month, the Local Court assessed damages against the Debtor in the amount of $60,000.00 and awarded Luis additional remedies, including the reinstatement of his job. The Aquinos attempted to enforce the Local Court Judgment against Encanto by filing a motion for contempt and execution of judgment in the Local Court Action on October 23, 2013. They asserted that Encanto was liable for the entire amount of the Local Court Judgment pursuant to "the doctrine of successor employer [liability]."

One week later, the Local Court entered an amended judgment (the "Amended Local Court Judgment"). Although it is unclear whether Encanto was named as a party defendant in the Amended Local Court Judgment, Encanto maintains that the purpose of the amendment was to enable the Defendants to enforce the original Local Court Judgment against it.

In December 2013, Encanto filed a "notification" in the Local Court Action, in which it asked the Local Court to take notice of the Sale Order and of the "nullity" of any procedural events in the Local Court Action that post-dated the petition date, including, but not limited to, the Local Court Judgment. Additionally, Encanto requested the dismissal of the Local Court Action pursuant to § 362(a)(1). Together with the Debtor, Encanto also filed an Urgent Joint Motion for an Order to Show Cause in the bankruptcy court, asking that court to compel the Aquinos and Attorney Cortés Babilonia to demonstrate why they should not be found in contempt for violating the automatic stay and the Sale Order. The bankruptcy court denied the motion due to the movants' failure to commence an adversary proceeding against the Aquinos.

## V. Encanto's Adversary Proceeding

Thus, in February 2014, Encanto—acting alone—commenced an adversary proceeding against the Defendants by filing a Complaint for Injunctive and Other Relief (the "Complaint"), setting forth three separate counts. In the first count, Encanto requested an order "enjoining [the] Defendants from any further litigation of the" Local Court Action and from enforcing the Local Court Judgment and the Amended Local Court Judgment (collectively, the "Judgments") pursuant to § 362(a). In the second count, Encanto sought, also pursuant to § 362(a), a declaratory judgment that the Judgments were "null, void and unenforceable" because they were entered in violation of the automatic stay. And in the third count, Encanto requested "an order finding the Defendants in contempt" and imposing sanctions against them for their willful violation of the automatic stay and the Sale Order.

In their answer to the Complaint, the Defendants asserted, among other things, that: (1) Encanto was not entitled to in-

junctive relief, as it was not a debtor and, moreover, the Defendants did not levy on any property of the Debtor's bankruptcy estate; (2) Encanto was not entitled to declaratory relief because the Defendants were never included as creditors in the Debtor's bankruptcy schedules; (3) the automatic stay did not apply to the Defendants; and (4) the Defendants' claims were not subject to discharge, as they were known creditors without actual notice of the Debtor's bankruptcy petition.

In July 2014—seven months after Encanto filed the Complaint—Encanto, the Debtor, and CIF filed an Amended Complaint, without seeking the bankruptcy court's leave or the Defendants' consent to add the Debtor and CIF as co-plaintiffs.[4] The Amended Complaint added a fourth count, seeking actual damages in the approximate amount of $222,000.00, as well as punitive damages for the Defendants' alleged violations of the automatic stay and of various court orders, including the order approving the Asset Purchase Agreement and the Sale Order.

## VI. The Motion for Partial Summary Judgment

Several months later, the Debtor, Encanto, and CIF filed the Partial Summary Judgment Motion on all counts of the Amended Complaint (except with regard to the imposition of the requested sanctions and attorneys' fees), arguing that the Defendants had either constructive or actual knowledge of the Debtor's bankruptcy case as early as November 15, 2012—the date of the Informative Motion.

The Defendants filed an opposition to the Partial Summary Judgment Motion (the "Opposition"), reiterating that: (1)

they were "known creditors" of the Debtor without notice of the Debtor's bankruptcy case; (2) because Encanto was not a debtor, it was not protected by a co-debtor stay; and (3) absent notice of the Debtor's chapter 11 filing, the Defendants could not have violated the automatic stay and their claims survived the Debtor's bankruptcy.

Encanto was the only plaintiff to file a reply to the Opposition. Reiterating its contention that the Aquinos' "first actual notice" of the Debtor's bankruptcy occurred on November 15, 2012, Encanto accused the Defendants of refusing to appear or take any action in the Debtors' bankruptcy case, despite their awareness of its pendency.

After conducting hearings and requiring supplemental briefing, the bankruptcy court denied the Partial Summary Judgment Motion in the September 2015 Order, stating in pertinent part:

> The Debtor/Co–Plaintiff admitted that the Defendants were known creditors at the time the petition was filed. The Debtor did not include the Defendants in the schedules, the statement of financial affairs nor in the creditor's mailing matrix. Known creditors are entitled to receive formal notice of bankruptcy proceedings and deadlines. In addition, the local court ordered the local attorney to submit evidence of the bankruptcy filing. The local attorney ignored the local court's order.

> The Defendants did not receive proper notice of the filing of the petition, of the claims bar date nor of the sale. Therefore, Plaintiffs' Motion for Partial Summary Judgment ... is DENIED as a matter of law.

4. Rule 15, made applicable to adversary proceedings by Bankruptcy Rule 7015, provides, in relevant part, that a "party may amend its pleading once as a matter of course within

... 21 days after serving it" or with "the opposing party's written consent or the court's leave." See Fed. R. Civ. P. 15(a)(1)–(2).

## VII. The Reconsideration Motion and the Cross–Motions for Summary Judgment

In October 2015, Encanto filed a motion to alter or amend the September 2015 Order (the "Reconsideration Motion"), pursuant to Rule 59(e). As grounds for reconsideration, Encanto complained that in the September 2015 Order, the bankruptcy court failed to address its request for a declaratory judgment. According to Encanto, this omission constituted "a manifest error of law." Encanto further asserted that the equities in the case supported its request for declaratory judgment, claiming it had "taken every precaution possible in the acquisition of the Debtors' assets." Accordingly, Encanto asked the bankruptcy court to "reverse, alter, and/or amend" the September 2015 Order, and grant its request for a declaratory judgment as set forth in the Partial Summary Judgment Motion.

The Defendants filed a cross-motion for summary judgment (the "Cross–Motion") as to all plaintiffs in the adversary proceeding, seeking dismissal of the adversary proceeding and a ruling that: (a) as known creditors, the Defendants "were entitled to actual notice"; (b) the Defendants never received actual notice of the bar date for filing proofs of claims, the reorganization plan, the confirmation hearing, the confirmation order, or the Asset Purchase Agreement; (c) the Defendants did not violate the automatic stay; and (d) the Defendants' claim was excluded from discharge.

In addition to the Cross–Motion, the Defendants also filed an opposition to the Reconsideration Motion, asserting Encanto's reconsideration request was filed outside the 14–day period prescribed by

Bankruptcy Rule 9023 and Rule 59(e). They further argued that even if the court were to treat the Reconsideration Motion as one filed pursuant to Rule 60(b), it should still deny the motion for failure to allege the existence of new evidence, an intervening change in the controlling law, or the need to correct a clear error of law or prevent a manifest injustice.

Encanto countered with an opposition to the Cross–Motion, which included the Second Summary Judgment Motion.[5] Encanto insisted it was "a good faith purchaser who took as many precautions as possible to put all current and former employees and creditors of the Debtors on notice regarding the sale of the IHOP restaurants." Encanto made no effort, however, to reconcile this assertion with the bankruptcy court's docket, which discloses that the Aquinos were omitted from the certificate of service relating to the Asset Purchase Agreement, the Sale Order, and notice of the hearing regarding the same. In support of its standing to seek redress for the Aquinos' alleged stay violation, Encanto advanced a "broad" interpretation of § 362(k), which, by its terms, permits only "an *individual* injured by any willful violation of a stay" to "recover actual damages ... and, in appropriate circumstances ... punitive damages." 11 U.S.C. § 362(k) (emphasis added).

## VIII. June 2016 Order and the Judgment

Following a hearing, the court issued the June 2016 Order. First, the court denied the Reconsideration Motion (the "Denial of Reconsideration"), declaring at the outset that "Encanto's reliance on the ... [S]ale [O]rder and [A]sset [P]urchase

---

**5.** The other co-plaintiffs, the Debtor and CIF, did not join in the Second Summary Judgment Motion. Neither the bankruptcy court nor the Defendants questioned Encanto's ability to file successive motions for summary judgment.

[A]greement is not convincing for the court to reconsider—let alone grant—the declaratory-relief requested ...." The court elaborated:

> Encanto contends that successor liability is a type of interest that may be eliminated in a bankruptcy sale, pursuant to 11 U.S.C. §§ 363(b)(1) and 363(f). However, the court was not called upon to make a determination of which interests may or may not be cut off in a bankruptcy sale. The court is not prompted to resolve the state law issue of successor liability because its threshold inquiry in the matter is with regard to the Aquinos' due-process rights to receive notice of the sale in the first place.

The court concluded that "general awareness" of a bankruptcy proceeding did not satisfy due process requirements and that as known creditors, the Aquinos were "entitled to receive notice of Debtor's bankruptcy filing and plaintiffs' asset-sale agreement prior to the court's approval of it." Unpersuaded by Encanto's argument that "the equities in the case" weighed in its favor, the court stated that Encanto "assumed the risks" associated with inadequate notice of the sale.

On the basis of the Aquinos' lack of notice, the bankruptcy court went on to grant the Cross–Motion and deny the Second Summary Judgment Motion, reasoning:

> [T]he Aquinos did not violate the automatic stay or the [S]ale [O]rder by continuing to prosecute their prepetition damages action against the Debtor.
>
> Because as known creditors the Aquinos were not provided with adequate notice of the bankruptcy filing, the claims bar date, the plan for confirmation, nor the bankruptcy sale, we further rule that

the Aquinos' claims are not discharged in this bankruptcy proceeding. The Aquinos' lack of adequate notice is a "defect which precludes discharge of a claim."

(citation omitted).

On June 15, 2016, the bankruptcy court entered the Judgment, granting the Cross–Motion and denying the Second Summary Judgment Motion.[6] Encanto filed this appeal. The Debtor has not appealed.

## POSITIONS OF THE PARTIES

### I. Encanto

In defense of its appellate standing, Encanto asserts it "has a pecuniary interest in the outcome of the appeal" as the purchaser of the Debtor's assets. Encanto maintains that the bankruptcy court erred in declining to rule that the Judgments were "void *ab initio*," regardless of notice, because they were entered in violation of the automatic stay, which took effect as soon as the bankruptcy petition was filed. Further, Encanto rejects the notion that the Aquinos lacked notice of the bankruptcy proceedings, contending that while "[e]ven a simple verbal notification" would have sufficed, the Defendants actually received formal written notification on November 15, 2012 via the Informative Motion.

Encanto asks the Panel to: (1) reverse the June 2016 Order and the Judgment; (2) declare the Judgments void *ab initio*; (3) remand for a hearing on damages resulting from the Defendants' willful violation of the automatic stay; (4) rule that it was entitled to acquire the Restaurants free and clear of the Defendants' claims; and (5) declare the Sale Order enforceable against the Defendants.

---

**6.** Although the Judgment references "Plaintiffs," as noted above, only a single plaintiff

moved for summary judgment—Encanto.

## II. The Defendants

On appeal, the Defendants dispute Encanto's claim that it was "diligent in notifying" creditors of the Sale Motion and the Sale Order; they also continue to maintain that, as known creditors, they were entitled to actual notice. As in the proceedings below, they argue there could be no stay violation absent proper notice.

## JURISDICTION

### I. Finality

A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits, even if the issue is not raised by the litigants. Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 546–47 (1st Cir. BAP 2005) (citing Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. BAP 1998)). A panel may hear appeals from final judgments, orders, and decrees of the bankruptcy court. See 28 U.S.C. § 158(a). "An order granting summary judgment is a final order where no counts against any defendants remain." Bartel v. Walsh (In re Bartel), 404 B.R. 584, 588 (1st Cir. BAP 2009) (citation omitted). Here, the June 2016 Order and the Judgment disposed of all counts as to all of the Defendants. As such, those rulings are final and, subsume all interlocutory orders, including the Denial of Reconsideration contained in the June 2016 Order. See Wiscovitch–Rentas v. Villa Blanca VB Plaza LLC (In re PMC Mktg. Corp.), 543 B.R. 345, 354 n.7 (B.A.P. 1st Cir. 2016) (citing Boyd v. Kmart Corp., No. 96-7065, 1997 WL 158183, at *6 (10th Cir. Apr. 2, 1997)).

### II. Standing

The Panel's jurisdiction, however, "does not rest on finality alone . . . ." Melo v. GMAC Mortg., LLC (In re Melo), 496 B.R. 253, 256 (1st Cir. BAP 2013) (citation omitted). "[P]rinciples of requisite standing" also "delimit" the Panel's jurisdiction. Pinpoint IT Servs., LLC v. Atlas IT Export, LLC (In re Atlas IT Export, LLC), 491 B.R. 192, 194 (1st Cir. BAP 2013) (citation omitted), appeal dismissed, 761 F.3d 177 (1st Cir. 2014). Therefore, before addressing the merits, the Panel must first consider the threshold issue of whether Encanto has standing to pursue this appeal. See Eldorado Canyon Props., LLC v. JPMorgan Chase Bank, N.A. (In re Eldorado Canyon Props., LLC), 505 B.R. 598, 599–600 (1st Cir. BAP 2014) (citations omitted). If Encanto lacks standing to bring this appeal, then the Panel lacks jurisdiction to decide it upon the merits. Id. at 600 (citing Zambrana Arroyo v. Scotiabank de P.R. (In re Zambrana Arroyo), 489 B.R. 486, 488 (B.A.P. 1st Cir. 2013)). "As in other jurisdictional contexts, of course, the party asserting appellate jurisdiction . . . bears the burden." Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001) (citations omitted). This means, in the context of this appeal, that Encanto must establish that it has standing to appeal every aspect of the June 2016 Order and the Judgment—including both the denial of relief under § 362 and the denial of relief relating to the Sale Order.

### A. The "Person Aggrieved" Standard

It is well settled that only a "person aggrieved" by a bankruptcy court order has standing to appeal, and that a "person aggrieved" is one whose pecuniary interests are "directly and adversely" affected by an order of the bankruptcy court. Id. at 117–18 (citations omitted) (internal quotations omitted). "A litigant qualifies as a 'person aggrieved' if the order diminishes his property, increases his burdens, or impairs his rights." In re El

San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987) (footnote omitted) (citation omitted). "To be directly affected by the order, the appellant's pecuniary interests … cannot be merely contingent or speculative." Orion Fitness Grp., LLC v. River Valley Fitness One Ltd. P'ship, No. Civ. 03-474-JD, 2004 WL 524430, at *1 (D.N.H. Mar. 17, 2004) (citing Davis v. Cox, 356 F.3d 76, 93 n.15 (1st Cir. 2004); Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 742-43 (3d Cir. 1995); In re El San Juan Hotel, 809 F.2d at 154-55)); see also Gentile v. De-Giacomo (In re Gentile), 492 B.R. 580, 585 (1st Cir. BAP 2013) (citations omitted).

## B. The Standing Analysis

■ As an initial matter, we reject Encanto's argument that its "party in interest" standing as an asset purchaser in the bankruptcy case is sufficient to confer unequivocal and unfettered appellate standing here. This argument is unpersuasive, as "[w]e apply a 'person[ ] aggrieved standard,' not a 'party in interest' standard, to determine bankruptcy appellate standing." Hlatky v. Murphy (In re Genesys Research Inst., Inc.), BAP No. MB 16-027, slip op. at 13-14 (B.A.P. 1st Cir. Sept. 12, 2016) (citing In re Combustion Eng'g, Inc., 391 F.3d 190, 217 (3d Cir. 2004). Qualifying as an interested party with standing to participate in bankruptcy court proceedings is not necessarily synonymous with being a "person aggrieved" for appellate standing purposes. See Sears v. Badami (In re Afy, Inc.), No. 8:10CV214, 2011 WL 1791651, at *2 (D. Neb. May 11, 2011) (stating that "merely being a party in interest is insufficient to confer appellate standing") (citation omitted) (internal quotations omitted); see also Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 541 (D.D.C. 2008), aff'd, Greater S.E.

Cmty. Hosp. Found., Inc. v. Potter, 586 F.3d 1 (D.C. Cir. 2009); Unsecured Creditors Comm. v. Leavitt Structural Tubing Co., 55 B.R. 710, 711 (N.D. Ill. 1985), aff'd, 796 F.2d 477 (7th Cir. 1986).

■ Two theories support a conclusion that Encanto lacks standing to seek redress for a stay violation. First, § 362(k) permits only "an *individual* injured by any willful violation of a stay" to recover actual damages, and, in some instances, punitive damages. 11 U.S.C. § 362(k) (emphasis added).[7] Although the Bankruptcy Code does not define "individual," the First Circuit has held that the term "was not meant to include corporations," such as Encanto. Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 7 (1st Cir. 2003).

■ Secondly, and perhaps more importantly, Encanto, as a non-debtor, cannot be aggrieved by the bankruptcy court's refusal to grant it relief under § 362. See Austin v. Unarco Indus., Inc., 705 F.2d 1, 4 (1st Cir. 1983) (stating that "the automatic stay provisions of … § 362(a) apply only to the bankrupt debtor"); Codfish Corp. v. F.D.I.C. (In re Codfish Corp.), 97 B.R. 132, 135 (Bankr. D.P.R. 1988) ("As a general rule the automatic stay … is limited to debtors and does not protect codebtors.") (footnote omitted) (citations omitted). The automatic stay is one of the most "fundamental [ ] protections" of a debtor in a bankruptcy case. Lynch v. Johns–Manville Sales Corp., 710 F.2d 1194, 1197 (6th Cir. 1983) (quoting S. Rep. No. 95–989, at 54–55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840–5841). Indeed, the principal function of the stay is to protect the debtor and property of the estate. See id. As the Sixth Circuit stated, "[n]othing in the legislative history coun-

---

7. Encanto does not cite a particular subsection of § 362 to support its request for relief. However, it is § 362(k) that provides an express private right of action to seek damages for alleged violations of the automatic stay. See Alley v. Saxon Mortg. Servs., Inc. (In re Alley), Adv. No. 13-2070, 2014 WL 2987656, at *2 n.9 (Bankr. D. Me. July 1, 2014).

sels that the automatic stay should be invoked in a manner which would advance the interests of some third party .... " Id.

Encanto lacks standing to appeal the bankruptcy court's order to the extent that the bankruptcy court declined to find a stay violation,· declined to enjoin the state court litigation, and declined to award damages based on § 362. Once the Debtor sold substantially all of its assets to Encanto, the Debtor was divested of all right, title, and interest in those assets and they ceased to be a part of the estate. They were no longer protected by the automatic stay. Encanto is not the debtor for purposes of § 362 and therefore, it is not the beneficiary of the automatic stay's protections. Encanto points to no controlling authority extending the automatic stay to protect a purchaser in a transaction authorized under § 363. In view of the limitations on the automatic stay, the bankruptcy court did not affect Encanto's rights in a detrimental way, did not increase Encanto's burdens, and did not diminish Encanto's property interests when it declined to grant § 362 relief to Encanto.[8] Having concluded that Encanto lacks standing to appeal issues related to the bankruptcy court's refusal to grant any form of relief under § 362, this appeal is dismissed, in part. In other words, to the extent that the June 2016 Order and the· Judgment oper-

ated to deny § 362 relief, we are without jurisdiction to review those decisions.[9]

■ We reach a different conclusion, however, as to Encanto's standing to appeal from the bankruptcy court's refusal to grant relief under the Sale Order. As noted above, the Sale Order authorized the sale of property of the estate to Encanto free and clear of liens, claims, and encumbrances under § 363(f), and that authorization is broad enough to extend to the Defendants' claims against the Debtor. When the Defendants sought to enforce their claims against the Debtor against Encanto in the Local Court Action, Encanto looked to the "free and clear" provisions of the Sale Order. This, we believe, is sufficient to confer appellate standing on Encanto, but only with respect to the bankruptcy court's refusal to grant relief under the Sale Order. Encanto's efforts in this respect do not suffer from the same defects that defeated its efforts to appeal the bankruptcy court's refusal to grant relief under the automatic stay. This conclusion leaves us to consider those portions of the June 2016 Order and the Judgment which amounted to a refusal to grant relief pursuant to the Sale Order. As with all grants of summary judgment, we review those aspects of the bankruptcy court's decision de novo. See In re PMC Mktg.

---

**8.** We are mindful that other courts have been "reluctant to give redress under § 362 to third parties" (other than pre-petition creditors) for stay violations on the theory that such parties lack prudential standing to seek relief. Rushing v. Green Tree Servicing, LLC (In re Rushing), 443 B.R. 85, 100 (Bankr. E.D. Tex. 2010) (internal quotations omitted) (ruling that non-debtor/non-creditor spouse lacked prudential standing to seek relief under § 362). However, we adhere to our circuit's traditional "person aggrieved" test for appellate standing.

**9.** Despite Encanto's assertion to the contrary, the Second Circuit's ruling in Church Mutual Ins. Co. v. American Home Assurance Co. (In

re Heating Oil Partners, LP), 422 Fed.Appx. 15 (2d Cir. 2011), does not affect the outcome of our standing analysis. There, the court ruled that the debtor's liability insurer, which was contractually obligated to satisfy the post-petition state court judgment entered against the debtor, was a "party in interest" with standing to raise the automatic stay issue. See id. at 17. That decision is distinguishable on two grounds. First, the Heating Oil court did not apply the "person aggrieved" standard which governs bankruptcy appellate standing in this circuit. Further, unlike the insurer in Heating Oil, Encanto's liability is neither contractual nor certain but, rather, dependent upon principles of successor liability.

Corp., 543 B.R. at 354 (citing Redondo Constr. Corp. v. Izquierdo, 746 F.3d 21, 26 (1st Cir. 2014)); see also Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (stating that where, as here, the appeal is "from cross-motions for summary judgment, the standard [of review] does not change") (citation omitted).[10]

## DISCUSSION

### I. The Standard

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." Id. (citations omitted). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." Id. at 763 (citing Fed. R. Civ. P. 56( [a] )).

### II. The Standard Applied

■ Although Encanto strenuously urged it to do so, the bankruptcy court refused to grant any form of relief pursuant to the terms of the approved Asset Purchase Agreement or the Sale Order. In denying the Second Summary Judgment Motion and declining to grant declaratory and injunctive relief, the bankruptcy court offered a single rationale: failure to provide proper notice of the bankruptcy proceedings to the Aquinos, who were known creditors, as required by the law of this circuit. Indeed, the First Circuit makes it

plain that a "creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred." Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 83 (1st Cir. 2008) (citation omitted) (internal quotations omitted). Encanto's efforts to distinguish Arch Wireless from the instant case on the grounds that the former involved a "discharge injunction, not the automatic stay" are unavailing. The requirements of due process do not recognize this distinction. As the Supreme Court stated:

> An elementary and fundamental requirement of due process *in any proceeding* which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (emphasis added) (citations omitted).

■ Further, notwithstanding Encanto's assertion to the contrary, a creditor's "general[ ] aware[ness] of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in that matter and present his claim ...." In re Arch Wireless, Inc., 534 F.3d at 83 (citation omitted) (internal quotations omitted). Rather, it is the duty of sale proponents such as Encanto to ensure that interested par-

---

10. We do not review the Denial of Reconsideration, as Encanto neither listed that issue in its designation of issues on appeal nor briefed it. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (providing that the appellant's failure to brief an issue waives it) (cita-

tion omitted). Even if the issue had been preserved, Encanto did not clear the high bar for reconsideration. See Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 608 (1st Cir. BAP 2017).

ties are afforded appropriate notice of the material terms of an all-asset transfer and the chapter 11 plan. W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 722–23 (1st Cir. 1994). Therefore, we find no error in the bankruptcy court's refusal, on cross-motions for summary judgment, to accord any relief pursuant to the Sale Order or Asset Purchase Agreement as against a known creditor of the Debtor who should have received proper notice of the sale proceedings but did not. We express no opinion as to the validity or enforceability of the Amended Local Court Judgment.

## CONCLUSION

Based on the foregoing, we **DISMISS IN PART** and **AFFIRM IN PART**. Due to Encanto's lack of standing, we **DISMISS** so much of this appeal of the June 2016 Order and the Judgment as relates to the bankruptcy court's refusal to grant relief under § 362. As to the bankruptcy court's refusal to grant relief relating to the Sale Order, we **AFFIRM**.

